I understand prior to today's proceedings that a motion to set additional authority was filed and we are prepared to grant that. So you both may rely on that throughout your arguments. And if you're ready to proceed, please go forward. that. Please, the court, counsel. I am an attorney with the legal advocacy service division of the Illinois guardianship and advocacy commission and our office is court appointed counsel on appeal for the appellant respondent in this case, Teresa C. There is a simple and straightforward way to deal with these two consolidated cases. This is a consolidated case for commitment, involuntary commitment, and involuntary psychotropic medication. Regarding the involuntary commitment, this court could vacate the commitment pursuant to the Torskey C case as this court did in the April 28th Merrilee M decision and the use of the unconstitutional dangerous conduct standard that has since been repealed in Illinois. Counsel, before we get too far, as a threshold matter, the question would be, is this case moot? And if not, why not? Well, I have addressed the mootness issue and the Alfred H.H. case in the opening and this case does meet exceptions to the mootness doctrine. And first, and the easiest exception, the court only need find one exception. But this case does meet the collateral consequences exception. It meets the collateral consequences exception because these cases marked the first ever entry into the mental health court system for Ms. Teresa C. So, this is a person who has not had any other involuntary orders entered against her. This is a person who, if these cases are not reviewed and decided on the merits, would have those collateral consequences attached based on this one experience with the mental health court. So, the collateral consequences exception applies. In the Val Kew case that this court decided about a year and a half ago, this court noted that collateral consequences applies when it's a first entry into the mental health court system. In this case, it is. And in this case, it is. In Val Kew, the court also said other exceptions may apply. And in Val Kew, the court also recognized that capable of repetition, yet avoiding review applies as well. I can go into these further or I can go right to the substance. I just think I wanted to get a feel for what your position was on the issue. Okay. But as far as the commitment, this court could do like it did in the Merrilee M case, and that is vacate the commitment on the grounds that it was decided under the court danger conduct standard. That standard was held to be unconstitutionally vague by the Fourth District in the Torski C case, and that this court applied the Torski C case in Merrilee M and vacated the commitment order in that case. As for the involuntary medication proceeding, this court could reverse or vacate the forced CFP case and the John M case. Those cases provide that if the commitment is reversed, the medication, the immediately following medication order can also be reversed because the medication is sought in conjunction with the respondent receiving inpatient care pursuant to a commitment order. So those are the straightforward ways to deal with this case. I would like to turn now to the particular substantive issues raised in the briefs. Because of time constraints, could you deal with the issue of the listing of a police officer to start? Yes. Statutory compliance with section 3-606 of the code requires identifying the peace officer who has reasonable grounds to believe that a person needs to be hospitalized. And this can be done by the officer executing the petition or the officer being named on the petition as a witness. This is very important because without reasonable grounds, the officer can only transport a person to a psychiatric facility on a valid order of detention and examination or, if authorized by the county sheriff, upon the receipt of a petition and certificates. So here we know there was no order for detention and evaluation in this case. And we know that the petition and certificates were only done after the person got to the hospital. So there was no basis for the officer, there was no mental health code basis either by a court order to bring the person to the hospital where there's already been some probable cause presented to a judge. We don't have that. We don't have a petition and certificates that have been filed already. And the arrangement with the county sheriff for the police to pick up this petition. This petition signed by the police officer, are you analogizing that to a jurisdictional issue? Well, according to the recent case law, I guess you would say that's a jurisdictional issue. It's a due process matter. It's not subject to harmless error. It cannot be waived. This is a matter that is very important because if a police officer is bringing a person to the hospital, the Joseph P case talks about how the reasons for the police officer bringing the person may not be important to the state, but it may be extremely important to the respondent. Why did this officer feel it necessary to bring this person to the hospital? Let me ask you this. Now they use the phrase exalting form over substance, but clearly it's undisputed in the record that the respondent was in custody at some point by a police officer, correct? In this case? How did the person get transit? Was it by the paramedics or how did the person get to them? According to the testimony in the record, the police brought her to the hospital. There's also some testimony in the record that paramedics brought her to the hospital. And I don't think it matters who brought her to the hospital. I agree that yes, she was in police custody and she was brought to the hospital. Yes. And whether the police brought her, whether the paramedics brought her at the police direction, she was in police custody. Police were required to either execute the petition or, you know, it's not a hardship to leave your names with the hospital. But it wasn't done. So what was the actual prejudice done in this case to the respondent without the police officer giving his name or signing the petition? First of all, I don't think that prejudice is required because the Joseph P. case says that this is not harmless error, that this is a requirement of the code and it's for due process reasons that we need to know who it was and why they felt there were reasonable grounds to bring this person to the hospital. But she was prejudiced because if you read the transcript and you read the facts, there are vague references to an altercation with neighbors. What was that about? There were no neighbors named as witnesses, no neighbors testified, and we have family members testifying at the trial about things that happened in the past for which they never brought the wife or mother to the hospital, for which they never called the police, for which they never executed a certificate. But what prevented the respondent from calling, you know, asking for the name? Or are you saying that there's no obligation for the respondent to ask? The respondent believes she was brought, I thought, by a police officer. She had that recollection. Why couldn't she impart that information to her counsel or to the court and have that person brought in? Well, yes, that could certainly happen. But I think it's important to keep in mind that the state always has the burden in these cases. It's the state's burden to make sure the petition is prepared properly, that all of the documents are in order, and it's the state burden to prove its case by clear and convincing evidence. It's not the respondent's burden to seek out witnesses. Well, here it appears that the court did find by clear and convincing evidence of that which was presented. Is it your position that the respondent here would have called the police officer to say there really wasn't an altercation, there really wasn't anything going on here, I was completely in control? I think that's a possibility. We don't know because we don't know who this officer was. We don't know what this officer observed. But we also know from the report of proceedings that nobody talked about that. There was talk about things that happened in the past. There was nothing talking about that particular day when police were called. Who called the police? We don't know. We don't know what happened, and yet she was brought to the police. The police came, police arranged for her to be taken to a psychiatric facility without an order of detention, without a petition to take it. So the error here on the state's behalf or their failure was to list a witness, and that's it. They simply failed to put the police officer's name, badge number, and department on the form. That would have cured the problem. The state could have filed a motion to amend. I can tell you that in Cook County, the legal advocacy service attorneys, my colleagues and I, also do the trial work. If we were to get a petition like this, we would file a motion to dismiss, or if we knew the police officer was known, we would perhaps file a motion for a more definite and certain pleading. But often the state is already on top of that, and the state has reviewed the petition, and the state is finding out that officer's name and filing a motion to amend the petition. So the state can cure that. And my question then is kind of twofold here. Had this been brought up during any of the proceedings, it could have been cured in a millisecond. Here's the police officer's name and badge number. I don't know that it could have been cured right away. Sometimes, well, let's say within an hour or two, it could have been. Please keep records of who responds to what incidents. That could have been cured. And maybe, I think this was considered DuPage County, maybe in DuPage County. Well, that's the facts we have. Yes, this is out of DuPage County. In other counties, it's not so easy to find out. And they're not always there. Regardless, my point is no one suggested, hey, you owe me a discovery here. You owe me a name. And so you're standing here today saying something that could have been cured or might reasonably have been cured, you're asking us to vacate everything because of the failure to omit one name. Is that your position? Yes, I am. And I think that's the code's position too. Well, that's my question. Where in the statute does it suggest that that's the remedy? Well, if you read some of the cases where strict statutory compliance with the code amounts to reversal because of the due process liberty interest at issue, these are cases that tremendously impose a person's liberty, impose a person's autonomy, and the requirements must be strictly applied. The Michael D. case is one out of the 1st District. And I think that is referred to in the briefs. So there's no exception. There's some underlying public policy purpose you're suggesting. So in the event, for example, of a horrific, violent incident, and a police officer who is transporting the respondent gets called away, then there's no remedy there. That's the end of the ballgame. That's the end of the inquiry. It doesn't matter what has happened. That's what you're suggesting, obviously, right? Well, I think this Court handled the Andrew B. case. The Andrew B. case is a case that says if there's something horrific and a person realistically needs to remain in the hospital, may I finish my answer? If the person needs to continue to remain in the hospital, the Andrew B. case, which was first decided by this Court and then addressed again at the Supreme Court level, it's okay to detain the person and file a new and appropriate petition. Okay. That would be the remedy. There are some protections there, though, because if the person is in the hospital, I think then the Court would need to take a look at, would probably need to do the petition. The petition would need to be done pursuant to Article 7 instead of Article 6 of the code. Article 6 is the petition and certificates. Article 7 is admission by court order. So if a case were in the trial court and there were a motion to dismiss because of this violation of 3606 and no police officer could be found, the case could be dismissed. And then the state could say, but Judge, we would at this time ask for permission for an order of detention to detain this person in order to file a new petition. And so, no, the person would not be just outright released. But then there would be care taken to provide the proper petition. I think, too, what would happen in that situation is possibly then the state would say, oh, we overlooked that. Your Honor, we would ask for a continuance. We would ask for a continuance to seek out the name of that police officer. So the case might not be automatically dismissed, but the state could then take the time to discover that information. As you know, in Article 8 of the code, there is an allowance for 15 days of continuance. So if at the first hearing date the state says, we haven't been able to find the police officer, we would like the time to discover that, well, then that could happen. But this is not the respondent's burden. This is a burden imposed on the petitioning process. And I would ask the court to kindly keep that in mind. I would also ask the court to consider that there are other issues here that also warrant reversal. And at this point, if there aren't any further questions, I know the time is up. No, I do have one. The issue here then isn't so much that the police officer was not identified, but that the petition that was filed was not proper in that it did not list the officer as the reporter or as a witness, and therefore the mandatory report is now not correct. Is that true? The petition does not meet the requirements of the Mental Health Code. That is correct. Okay. If there are no other questions at this time, I would just preserve a chance to come back for reply. You'll have a chance. Thank you. Do you wish to argue? Your Honors, that section of the code only applies when the peace officer takes the respondent into custody and transports them to the hospital. That did not happen in this case. Wait. Maybe it says in custody or transport, doesn't it? And transports. Did he order the transport? Did he call for the transport? We don't know that. Well, when did they just arrive? What happened is if you look at the petition on page 4 of the record, the box is checked that the police officer or peace officer did not transport this respondent. In the transcript at pages 60 to 61, the doctor testifies, apparently the police were present at the incident at some point, but it was the paramedics that transported the respondent to the hospital. Now, the paramedics can transport for any number of reasons. The respondent could have voluntarily agreed. Her family could have persuaded her that she needed to go to the hospital to get an evaluation rather than be arrested by the police for disorderly conduct or something else. Respondent did not raise this issue. Her family wasn't present according to the facts. I'm sorry. It's been quite a while. I don't remember who was present. I remember she was at the neighbor's house when this all transpired. Correct. But we don't know who else was present with the neighbors. This issue was not raised in the trial court. Had respondent is correct, if it's not correctly filled out, the proper remedy is to file a motion to dismiss in the trial court. That was not done here. I believe that the trial judge offered trial counsel an opportunity to raise any issues, and she didn't. So are you saying, then, that her objections under the case law can be considered waived? Yes. They should be. Is the certificate mandatory? Is the petition mandatory? What happened here is the petition was filed by someone at the hospital. That person checked the box on page 4 in the record that said the respondent was not transported by the peace officer. But did the person who signed the petition actually see, at the time of bringing a respondent in, any conduct? We don't know. He didn't testify? No. The people that testified at the hearing were the doctor who did the evaluation, the respondent's husband, the respondent's daughter, and the respondent's son. Any of those people could have been asked any questions at any time had they been present at the incident, which led to her evaluation and eventual admission. But that was not raised at the trial court by either party. There is some information from the doctor who apparently discussed the incident with the respondent, but because there was no focus on that because of any sort of pre-trial motion, that was not fleshed out very well. So, certainly, this works. Her position seems to be, well, yeah, that's all well and good, but who has the obligation and burden here to go forward? Well, in this case, it would be the respondent if she believes that the police officer transported or should have been named. Well, she testified that the police brought her. That was her position. It's the hospital or the petition that indicated it was paramedics. I don't believe that she said that she was transported by the police officers. It's been quite a while, but my recollection is that the doctor's testimony is that the police, in fact, were present at the incident at some time, but there's no evidence that she was ever in custody by the police, and the doctor's statement is that the paramedics transported her. This section only applies if the respondent is in custody and transported by the police officer. So this doesn't apply if there was certainly, you know, at some point the police were mentioned, I believe, in one of the certificates or perhaps in the petition. Sure. Your bottom line is you can have 50 police officers there, but if they didn't transport her and they didn't put her in custody, that's it. It doesn't apply. This section does not apply, and this is what she's basing her argument on. And what evidence did the state present to show how she got to the facility? They checked the appropriate box on the petition. My question is what evidence was presented at the hearing to show that that's, in fact, what happened? We don't have to prove that. Unless it's raised as an issue, we don't have to show how she got there. The petition stands. Right. And unless it's challenged, that's it. You have to assume that that is correct, unless it's challenged and there's some contrary evidence presented. Well, who determined by the petition that there was an immediate need for hospitalization? That would have been whoever did the evaluation. But that was after she was there. That's correct. Isn't it important how the person gets there? He's alluding to a due process concern. We don't care about how anybody can just drop somebody off? We don't care? If it's raised as an issue, it could become necessary to have information about that. At this point, it wasn't raised as an issue. There's no allegation that she wasn't, in fact, mentally ill and this is part of a divorce proceeding and it's all a plot by her husband. There's nothing like that. The woman was ill. She was taken for an evaluation, which is the proper procedure. I think one of the underlying tenants of the case law is that a person needs to be treated rather than criminalized. It's always better to have the paramedics transport a person to the hospital for the evaluation rather than have the more intimidating custodial police officers transporting a person. You seem to be suggesting that it really doesn't matter how the person gets there unless the respondent, through counsel, raises the issue. I believe that's correct. I mean, certainly in this case, unless an issue is raised, we can't develop a record in the trial court, which would be the appropriate place to determine this. What about her argument citing the case law that says that a proposition is that the petition and the proceedings are fatally flawed unless the person who transports the respondent is identified? The statute which she's seeking to apply in this case, which is in Respondent's Brief at page 3 if you want to look at it, says a peace officer may take a person into custody and transport him to a mental health facility when the police officer has reasonable grounds to leave, blah, blah, blah. So this section only applies if the peace officer has taken the person into custody and transported them. There's other protections for a respondent who has been transported by someone else. In this case, it's unclear who actually transported? I believe that the doctor says in his testimony, I have the reference for pages 60 to 61, that it was the paramedics. You're not saying this is irrelevant, but you're saying this portion of the statute only kicks in when a police officer is the one who arrives in a scene, makes his requisite findings, or allegedly makes his requisite findings, puts the person in a squad car, and delivers them to a facility. Then he or she is obligated to either sign the petition or at least say, here's my badge number. Yes, that is when the law requires that officer's badge number. And if someone else transported, if her family had transported her, the neighbor had taken her, or unbeknownst to the police, somebody else. If she wandered in on her own. Or if a 911 call is made and dispatch notifies the fire department or dispatch notifies an ambulance. Had an ambulance appeared on its own without any police involvement and be transported. And my next question is, if that's the case, whose burden is it to bring that issue forward? Well, in this case, it would have been the respondent's because the box was appropriately checked that the officer had not transported. Well, the box was checked. Or appropriately. That said no, that this person. So that's the presumption. Right. And we presume that that petition is correct. Correct. So the respondent, you stand by it as the state. Yes. If there's a problem with it, it's the defendant, sorry, respondent's burden to raise it either in some type of pleading, motion to dismiss, clarification, etc. Exactly. Okay. That's your position? Yes. Okay. And she does have remedies. She could ask for a continuance. She can ask for a motion to clarify. Again, that's her burden. Because this doesn't apply in this case. Do your honors have a desire for any specific order for the other issues? Proceed as you wish. Okay. I'm going to briefly address the predispositional report. In this case, there was a predispositional report filed. There was no objection by the respondent at the trial. So, again, that should be any problems with the report should be considered waived since she made no objection at the appropriate time. Did she waive her freedom? Are you saying that she has the right to waive her freedom? A woman who is there because we have a basic presumption that she is unable to care for herself. Well, at the point where the predispositional report comes in is when the court has already found her subject to involuntary admission and they're trying to decide the appropriate method for treating. And hospitalization is the most restrictive, so that is the remedy of last resort. Under the statute, there is a requirement that the least restrictive alternative be sought and chosen. And what you're saying is she has an obligation. We shift the burden to the respondent. Where does it say we shift? Where in the statute does it say we shift to the respondent? Well, in this case, the statute requires a predispositional report. That is section 3-810. And that says before the disposition is determined, the state has to submit a report. It doesn't say the respondent, it says the state. The state did that, and the respondent made no objection to the report that went in. At that point, when the state files it, if she believes it to be insufficient, it is then her duty to raise questions of the sufficiency of the report. What about the case citing that? On page 27 is the start of that issue in my brief. And one of the most recent cases is a lack of W. And in that case, it considers the issue of waiver of the predispositional report and examines some of the prior case law and notes that the purpose is to provide the trial judge with information necessary to determine the appropriate disposition. And that the written report can be supplemented by oral testimony if it's insufficient. So in this case, they're looking at waiver because no report has been filed. And then the rest of the court, the cases that I cite in my brief, talk about when the reports are sufficient or insufficient. And in particular, on page 30, there's a couple cases where there's not a detailed, a very detailed statement, but the doctor has testified that the person, the only appropriate method of treatment is actual hospitalization. And she needs inpatient treatment. That's Lisa, GC, and Burt W. And in those cases, there is no less restrictive alternative. The doctor testifies to that. In this case, we not only have the doctor stating that, that she's not psychiatrically stable enough for an alternative or lesser form of treatment, but we have testimony from her family who would be the alternative care providers. And it's obvious that since she's just been removed from the home, that she is in fact a danger to them, and they cannot provide an adequate level of care for her in the home until she becomes psychiatrically stable enough. But one of the cases you cite, which is Hannah E., says the burden is on the state, the people, to demonstrate that hospitalization is the least restrictive alternative. And this may be proven by expert supported by evidence. It doesn't say anything that the respondent has to do anything. It doesn't even have to be there, frankly, because we excuse the respondent's presence under some circumstances. And that was done in this case. We have the doctor's testimony that the least restrictive alternative is inpatient treatment. But my question was, you know, the burden. You said that we could shift the burden to the respondent, and I don't believe there's any authority. Sorry, I don't mean to interrupt you. But the burden shifting comes if you're objecting to a lack in it. In this case, the people met their burden because they filed the predispositional report. There was no objection. And they also supplemented it with testimony by the doctor, by her family. If there were any defects, which the respondent failed to point out at the time, it was cured by the subsequent oral testimony. But we still don't have a clue what gave rise to the institutionalization in the first place. And wouldn't that be the state's burden? We do. What we have is a respondent who was taken for an evaluation at the hospital, as was the appropriate course of proceedings. She was evaluated at the hospital. There was a petition filed. There were two certificates. But she wasn't there for just the 72 hours. She was there for longer than 72 hours. Because if it was just to have an examination done, it would be a lesser period of time. Right. If I'm correct, and it's been quite a while since I looked at this, and I was also looking at Marilee and getting the facts a little confused, but I believe that she was taken to the hospital, there was some evaluation done, and then she was transported and more evaluation was done at the hospital. I believe that to be the sequence of events. But please don't. So, anyways, what is required by the state in their burden of showing for her involuntary admission is that she be evaluated by a competent professional, that there be a petition, that there be the two certificates, that we have a hearing, that the witnesses appear to testify, have the opportunity to cross-examine by the respondent's attorney. That all took place. The trial judge found, and this wasn't even close in his mind from my interpretation of his comments, that he had no question that this woman, in fact, was mentally ill and needed hospitalization. Would your honors like me to address any of the other issues or the constitutionality? I don't have any other questions. Any other questions? Mr. McBride? Thank you very much. I do want to just bring to the court's attention Section 3-101 of the Mental Health Code, and that is the section that says that the state shall ensure that petitions, reports, and orders are properly prepared. It's the state's burden at all times to make sure that this infringement on an individual's liberty, this non-criminal infringement on a person's liberty that is considered even greater than criminal confinement, is done correctly. I think that's an accurate statement of the law, generally speaking, but her point appears to be more subtle in this case. A BACS is checked. Whether it's erroneous or not, a BACS is checked. If you, as respondent's counsel, know that there's some issue or some potential infirmity, and you proceed and you don't raise it at the appropriate time, why hasn't it been waived, even if it was their burden to begin with? Well, the Joseph P. case that this Court allowed me to cite as additional authority, which came out recently, says that this is not harmless error. This is not something that can be waived. This is the public defender's… That's your interpretation of the case? That's my interpretation. Because look at the differences between Article VI and Article VII. If a person is picked up ex parte, no notice, no notice that they're going to have an exam. If they are picked up out of their home and taken to a psychiatric facility for an examination and possible admission, think of the infringement on that person's liberty. If the person truly has a mental illness and is in need of some type of treatment, think of the counter-therapeutic nature of that type of action. Isn't it only when they're picked up by a police officer? If I decide someone in my household is out of control, you're saying that I cannot get them in a car and bring them to a hospital? I am not saying that. Nobody in Ms. C.'s family did that here. And, yes, I think if it's not a police officer, then Joseph P., even under your interpretation, doesn't apply. Well, I would like to just reference the transcript for when the doctor says that the police brought the person to the hospital. And that's included on page 8 of the original brief in the appellate statement of facts. And it's citing, it's quoting where the doctor says on the record, the neighbors called the police, that's how Teresa was brought over here to Hinsdale Hospital. So the police were involved here, and according to 3605 of the Mental Health Code, paramedics are allowed to transport a person to the hospital if they are on a contract with the county sheriff and presented with a petition of certificates. And the recent Karen E. case out of the 1st District talks about the vast difference between an Article VI and an Article VII admission. Article VII provides for... Wait a second. So are you saying that because the statute would have precluded the paramedics, that they could not possibly have transported her? The Mental Health Code envisions that if someone needs to come to the hospital, they are going to seek an order for their evaluation. If there's an emergency, then the court can enter an order right away for the person to be brought to the hospital. Ex parte. There doesn't have to be any notice to the respondent. That can happen right away. If there is a need for that, and Article VII also says that if there is this need, the court has to make a finding that it's necessary for an ex parte picking up of the person and bringing to the hospital, and if it's not, the person is entitled to, I think it's three days' notice, and they're entitled to stay at home pending their evaluation. They would have to report for their evaluation. The court can enter an order to accomplish that evaluation. If the court makes a finding that there is an emergency, the court can order the person detained without notice to the person. If the court determines that there is not an emergency, the person is then given notice, and a time is set for the evaluation, and if the court thinks it's necessary, the court can arrange for transportation so that the person will get to their evaluation with that three days' notice. But there is a vast difference between the emergency admission by petition and certificates and somebody in the community thinking that a person needs hospitalization, and I would ask the court to keep in mind that there are therapeutic jurisprudence concerns here at work and that the sudden appearance of a person in authority, we know the police, we're here, and as far as I can tell from the record, the understanding was that the police orchestrated this person coming to the hospital. I don't know if the police brought the person or if the paramedics brought the person. The doctor refers to the police bringing the person to the hospital, and in that situation, this person was entitled to some due process, and the very least of this is that the police officer had their name on the petition, and it's not asking too much for the state to comply with the Mental Health Code-specific requirement that the state shall ensure that these papers are done correctly. And I would say that it is a shame here that the public defender did not object, but looking at the Mental Health Code, the state has the burden of making sure that everything is done properly. When the petition is filled out at this hospital, the respondent walks in with two paramedics on either side. Is it not reasonable to conclude that that's in fact how the respondent arrived at the front door of the hospital or the facility? I don't know what happened with getting that person to the hospital. The doctor testified. I mean, with all due respect, I think that's a stretch based on his testimony. But someone observed the respondent walk in, checks a box that says they did not arrive via the police. Cannot the state rely on that? I mean, are you saying that the state has to check every single thing that's filled out on a petition, that's filled out by someone else over which they have no control? I mean, can't they rely that people in their ordinary course of business are checking the right boxes and making the right observations? Judge, maybe nobody, maybe based on the way this petition was prepared, it was a mistake on the part of the hospital. I don't, we don't know. None of us know. But in fact, she was brought by someone other than a police officer. Maybe this decision needs to be directed at the police officers. I think there is a concern among officers that they do not want to get involved in these type of cases, and they will not have their presence known. And yet it's very important. Why were the police called for this particular situation? Was this a situation where Ms. C needed to be brought ex parte without notice to a psychiatric facility? We know, we know from the record that she did very well at the hospital. She, the doctor said she's doing... But that's got nothing to do with whether the petition was correct. Well, had the officers done the right thing? Had they either executed the petition or been named on the petition? But what if they had nothing, I mean, we keep stepping over the threshold. Where is the evidence that they had anything to do? I'm saying they, maybe it was one, maybe it was four. Well, in my experience, now I was not the trial counsel here. Right, not, with all due respect, your experience, not part of this record. Okay, well you're asking me how do we know? We know from the admission records. Based on this record. We don't know based on this record. So how can we put that burden on the state? You're saying to us that the state has to correct a petition even when they don't know it's false. Because the state is the representative for all the people. And the state must make sure the respondents are getting their due process. Right, and the petition says this person arrived in a cab. This person arrived by paramedics. An ambulance brought them. Can't they rely on that? Or do they have to make phone calls and say, are you sure there wasn't a police officer, excuse me, involved? I mean, that's what I hear you basically saying. And I think what would happen is during the preparation phase, I think that both sides would look at the medical record in order to prepare. The medical record would specify how the person came. Well, let's say they didn't, though. Let's carry our example one step further. A, do they have the burden? And B, if they don't do something and the respondent's counsel knows, you can just lay back, let everything go to hearing, and then decide to raise it later? Well, looking at the burden. You're saying if the burden is totally on the state, you can lie in the weeds. And as I said in my initial argument, in Cook County, if I were to see this situation, I would file a motion because I would want to find out who that person was. But that didn't happen here. It didn't happen here. And this is not the first district. However, when it came out in the testimony that when the doctor said, the doctor said, quote, neighbors, the hospitalization happened because of neighbors, quote, complaints to police, end quote. There was, quote, a major altercation with the neighbor when the police were called, and the neighbors called the police. That's how Teresa was brought over here, end quote. At that point, where was the state to say, wait a minute, we don't know anything about this police officer. Let's pause here for a moment and see if we can find out who this is. Where was the respondent's counsel then? Where was the judge to say, wait a minute, if a police officer brought her, that contradicts the petition. Let's get to the bottom of this. This is just, this is very important. When a person is picked up with no notice and brought to the hospital, I'm asking the court to take into account the serious infringement on a person's liberty that that represents and how we can't ignore it. We need to make sure that if officers are doing this, they are executing the petition, they are putting their names on the petition as a witness, that putting your name on the petition as a witness, leaving your name with the hospital to make sure they add that. That is not a burden. It's not a burden on the officer. It's not a burden on the hospital staff member. Who was the petitioner in this case? You know, it's some staff member who may be way down the line and did not even observe this person come into the emergency room. Your Honors, this case cannot be permitted to stand, first of all, because it was, this was a commitment based on the now unconstitutional and since repealed standard of dangerous conduct. So I would ask the court to reverse on that matter. I would ask the court to reverse the medication, and I would ask the court if there's any consideration of the dispositional report, that the court consider there was not sufficient, there was not a sufficient report in writing, which is required, which is required by the statute. We have only the doctor's mere opinion that even though this person is doing well and going to groups and doing lovely in the hospital, that she has to stay in the hospital. That is insufficient for the court to keep her on that basis. If there are other questions, I'd be happy to answer them. Otherwise, I'll leave you.